## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

<table>
<tr><td>

George Labadie and
Susan Carcieri

       Plaintiffs,

v.

Daniel Rosario,
Stanley Carpenter,
Brian Hackett,
W-G Federal Credit Union,
Deborah Beando,
John Doe 1,
John Doe 2,
John Doe 3,
John Doe 4,
John Doe 5, and
The City of Worcester,

       Defendants.

</td><td>

Civil Action No. 05-40148 FDS

</td></tr>
</table>

## DEFENDANTS W-G FEDERAL CREDIT UNION AND DEBORAH BEANDO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COME defendants W-G Federal Credit Union ("W-G") and Deborah Beando ("Beando") and submit the following Memorandum of Law in Support of their Motion to Dismiss Counts I, II, III and V of the Plaintiff's Complaint.

    **I.**    **Defendants W-G and Beando are Entitled to Dismissal of the Counts Against Them Because the Plaintiff Does Not Allege Facts Sufficient to Support Her Claims**

This Court should Dismiss Counts I, II, III and V against the defendants Beando and W-G because the plaintiff fails to state a claim upon which relief should be granted.[1]

The only federal question claim brought against Beando and W-G is contained in Count V, which asserts an alleged violation of 42 U.S.C. § 1983. This federal claim should be dismissed because the plaintiff failed to plead with sufficient specificity a conspiracy to violate Carcieri's civil rights.

The state law tort claims alleged by Carcieri against defendant Beando and W-G, assault and battery (Count I), false arrest and imprisonment (Count II) and intentional infliction of emotional distress (Count III), should be dismissed because they are all personal injury claims arising out of Carcieri's employment, and accordingly are barred by the Massachusetts Workers' Compensation Act.

Alternatively, all of the state law claims against Beando and W-G should be dismissed for failure to state a claim upon which relief can be granted.

Alternatively still, if this Court dismisses the federal claim in Count V, this Court should dismiss the remaining state law claims against Beando and W-G, as it lacks subject matter jurisdiction over them, and considerations of comity, judicial economy and fairness weigh in favor of dismissal.

## II.    Facts Alleged in the Complaint

The defendants W-G and Beando, for purposes of this motion only, take the well-plead facts in the plaintiff's complaint as true:

George Labadie ("Labadie") and Susan Carcieri ("Carcieri") are both residents of Worcester, Massachusetts.[2]  Defendant W-G has a principal place of business in Massachusetts[3]

---

[1] Carcieri is the only plaintiff to bring a claim against Beando and W-G, therefore, in this memorandum she will be referred to as the sole plaintiff.

and defendant Beando resides in Worcester, Massachusetts.[4]  Defendant Beando is, and was at all times relevant to this complaint, manager of the credit union.[5]

Plaintiff Carcieri worked at W-G from 1994 until August 29, 2002.[6]  She was the office manager on August 27, 2002 when the credit union was robbed.[7]  Carcieri was the only person, apart from the thief, present in the credit union when the robbery occurred.[8]  On August 29, 2002, Carcieri received a phone call at home from Beando asking her to "come over to the Credit Union for a minute because I need your help."[9]  When Carcieri arrived at the credit union, she was grabbed by two police officers, identified in the complaint only as Doe 1 and Doe 2.[10]  Carcieri was led by Doe 1 and Doe 2 past customers and tellers she knew and upstairs to a small room on the second floor of the building where Doe 3 was sitting at a desk.[11]

Doe 3 told Carcieri that he and Does 1 and 2 were all Worcester police detectives investigating the robbery at the credit union.[12]  Doe 3 ordered Carcieri to sit down.[13]  Doe 1 then walked to the door to the room and stood in front of it; Doe 2 stood next to the seated Carcieri.[14]

Carcieri twice requested that her attorney be contacted, but her requests were denied.[15]  Carcieri also asked to be allowed to call her daughter, because Carcieri had agreed to pick up her grandchildren at school that day.[16]  Does 1-3 refused to let Carcieri make any phone calls.[17]

---

[2] Plaintiff's Complaint, ¶¶ 3-4.
[3] Id. at ¶ 13.
[4] Id. at ¶ 14.
[5] Id.
[6] Id. at ¶ 19.
[7] Id. at ¶ 21-23.
[8] Id.
[9] Id. at ¶ 27.
[10] Id. at ¶ 28.
[11] Id. at ¶ 29.
[12] Id.
[13] Id.
[14] Id.
[15] Id. at ¶ 30.
[16] Id. at ¶ 30.
[17] Id.

49019.1

Does 1-3 interrogated Carcieri for approximately two and a half hours, yelling at her and threatening her.[18]

At 3:00 p.m., Carcieri again requested permission to call her daughter.[19]  Doe 1 took Carcierie downstairs to the phone and placed the call for her, refusing to let her speak to her daughter.[20]  Doe 1 then took Carcieri back up the stairs to the small room in which Does 2 and 3 were waiting.[21]  At approximately 3:30 p.m., Carcieri's daughter entered the room.[22]  Doe 3 handed Carcieri a phone and let her call her attorney, who advised her to leave immediately.[23]

While Carcieri was waiting in the small room for her daughter to pull the car around, Beando entered the room.[24]  Beando got on her knees, grabbed Carcieri by the ankles and "begged Carcieri to 'confess' that her husband, Labadie, had robbed the credit union."[25]  At all times relevant to the complaint, Does 1-3 were acting under color of state law.[26]

> The plaintiff summarizes these allegations by claiming:
>
> Beando acting individually as well as within the scope of her authority as the Manager of the Credit Union, conspired with Doe 1, Doe 2 and Doe 3 to 'lure' Carcieri to the Credit Union where, without a warrant, she was, *inter alia*, but without limitation: assaulted, battered, placed under false arrest and imprisonment, subjected to conduct which was extreme and outrageous causing acute mental distress and deprived of other civil rights, including her right to counsel.[27]

### III.    Standard of Review

For the purposes of a Rule 12 (b)(6) motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the

---

[18] Id. at ¶ 32-33.
[19] Id. at ¶ 33.
[20] Id.
[21] Id. at ¶ 34.
[22] Id. at ¶ 35.
[23] Id.
[24] Id. at ¶ 36.
[25] Id. at ¶ 36.
[26] Id. at ¶ 38.
[27] Id. at ¶ 37.

plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Giuliano v. Fulton, 399 F. 3d 381, 386 (1st Cir. 2005) (quoting Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002)). Dismissal of a claim is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## IV.    Argument

### A.    The Plaintiff Fails to Allege Sufficient Facts to Support an Allegation of Conspiracy to Violate Her Civil Rights Under 42 U.S.C. § 1983

The plaintiff fails to allege sufficient facts supporting an allegation that the private defendants, Beando and W-G, violated her civil rights under 42 U.S.C. § 1983.  42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . . .

42 U.S.C. § 1983 (2005).  To establish a claim under § 1983, a plaintiff must first establish that a person, acting under color of state law, deprived the plaintiff of rights secured by the Constitution.  Tauvar v. Bar Harbor Congregation, 633 F. Supp. 741, 747 (D. Me. 1985).

The only constitutional right Carcieri explicitly alleges has been violated is her right to counsel.  There are two constitutional sources of the right of an accused to the advice of his or her attorney, neither of which apply in this case:

> The Sixth Amendment right to counsel attaches only upon the initiation of adversary judicial proceedings against the defendant, and thereafter the right applies to all critical stages of the prosecution, before, during, and after trial. . . . The Fifth Amendment guarantees a criminal suspect the right to counsel during custodial interrogation.

49019.1

Brisson v. New Bedford, 2005 U.S. Dist. LEXIS 26280, 15-16 (D. Mass. 2005).  As no formal charges had been initiated against Carcieri at the time she filed her complaint, the Sixth Amendment right to counsel is inapplicable.  See id. at 16.

The right to counsel during custodial interrogation is rooted in the Fifth Amendment's protection from self-incrimination.  See Giuffre v. Bissell, 31 F.3d 1241, 1256 (3d Cir. 1994) ("The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation recognized in Miranda v. Arizona, . . . , is merely a procedural safeguard, and not a substantive right.") (citation omitted).  The Supreme Court has held that there is no private cause of action under 42 U.S.C. § 1983 for violation of a plaintiff's Fifth Amendment rights absent the use of plaintiff's statements at trial.  See Chavez v. Martinez, 538 U.S. 760, 770-71, 777 (2003).  Therefore, the Fifth Amendment right to counsel is also inapplicable in this case, as Carcieri does not allege that any statements she made in the course of the interrogation were used against her at trial or other adversarial proceeding.  See id. at 770-71.

Arguably, Carcieri's allegations of false arrest and imprisonment may be construed as a claim of a violation of her right to be free from unreasonable seizure under the Fourth Amendment.  "The Fourth Amendment right to be free from unreasonable seizures of the person demands that [such a seizure] be supported by probable cause."  Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989).  Whether an individual has formally been placed under arrest, or merely "seized" within the meaning of the Fourth Amendment, has no bearing on the issue of whether the seizure was reasonable.  See Dunaway v. New York, 442 U.S. 200, 215 (1979).

"[Federal and state false arrest and imprisonment] claims brought under § 1983 are guided by the tort law of the forum state."  Hall v. City of White Plains, 185 F. Supp. 2d 293,

299 (D.N.Y. 2002); see also Felix v. Lugas, 2004 U.S. Dist. LEXIS 15520, 28 (D. Mass. 2004).

Massachusetts defines seizure as "an intentional acquisition of physical control [which] occurs only when there is a governmental termination of freedom of movement through means intentionally applied."[28] Gutierrez, 437 Mass. at 401.  Accordingly, Carcieri's allegation that she was kept in a small room by the police officers and not allowed to leave, may be read as a claim under § 1983 that she was unreasonably seized in violation of her Fourth Amendment rights.

Generally, "persons victimized by tortious conduct of private parties must ordinarily explore other avenues of redress," "[s]ince § 1983 is aimed at state action and state actors . . . ." Roche v. John Hancock Mutual Life Ins. Co., 81 F. 3d 249, 253 (1st. Cir. 1996).  In certain rare instances, § 1983 suits against private individuals are allowed, where "private actors may align themselves so closely with either state action or state actors that the undertow pulls them inexorably into the grasp of § 1983." Id. at 253-54.

In these rare cases, complaints asserting violation of § 1983 against private defendants are subject to stringent pleading requirements.  "[F]or purposes of satisfying the section 1983 requirement of action under color of state law, the plaintiff must plead in some detail, through reference to material facts, the relationship or nature of the cooperation between the state actors and the private individuals." Caraballo Cordero v. Banco Financiero de Puerto Rico, 91 F. Supp. 2d 484, 491 (D.P.R. 2000) (citations omitted).  "Speculative pleadings fall short of even a[n] adequate claim . . . ." Id. (internal quotations omitted).  In addition, "bare conclusory allegations of conspiracy cannot survive a motion to dismiss." Tauvar, 633 F. Supp. at 747.

> "Although it is true that private parties jointly engaged with state or local officials in prohibited conduct can be said to act under color of state law, . . . ,

---

[28] Compare the definition of seizure under Massachusetts law with the definition of false arrest under Massachusetts law: "1) the defendant intended to confine the plaintiff; 2) the plaintiff was conscious of the confinement; 3) the plaintiff did not consent to the confinement; and 4) the defendant had no privilege to cause the confinement." Brisson v. City of New Bedford, 2005 U.S. Dist. LEXIS 26280, 23 (D. Mass. 2005).

7

general allegations of cooperation between private individuals and unspecified government agencies do not, in our opinion, make out a claim of action taken under color of state law. . . . Especially because the circumstances under which cooperation by a private party with law enforcement personnel will convert private action to state action are unclear, . . . , it is appropriate to require that the relationship or nature of cooperation between the state and a private individual be pled in some detail. This is in line with our requirement that some factual basis supporting the existence of a conspiracy must be pled when a conspiracy is alleged in a civil rights case.

Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980) (citations omitted).

The plaintiff has not pleaded in detail "the relationship or nature of cooperation" between the state actors and private defendants, as required.  See Caraballo, 91 F. Supp. 2d at 491.  She has done nothing more than plead bare conclusory allegations of conspiracy, which cannot survive a motion to dismiss under Tauvar.  See Tauvar, 633 F. Supp. at 747.

The only facts alleged by the plaintiff to support her allegation of conspiracy between the Worcester police and Beando and the credit union are: 1) that Beando called Carcieri and asked her to come to the credit union on August 29, 2002, 2) that the state actors interrogated Carcieri in a room at the credit union, and 3) that after several hours and once the interrogation was completed and Carcieri was waiting to be picked up by her daughter, Beando entered the room and asked Carcieri to confess her husband's involvement in the theft.  The allegations in the complaint clearly demonstrate that Beando did not participate in any of the actions that deprived Carcieri of her rights, and further are insufficient to support an allegation that Beando conspired with the police in the alleged violation of Carcieri's constitutional rights.

The complaint is also void of any allegation that Beando knew that the police intended to detain Carcieri in a small room in the bank, or that she knew that the police intended to prevent Carcieri from having access to her lawyer during the period in which she was detained.  There are no allegations in the case sub judice of how the state actors and private defendants carried out

the alleged conspiracy. There is no allegation of concerted actions or cooperation. Finally, it is not reasonable to infer from the very limited allegations, that Beando knew the police were going to seize Carcieri. The only reasonable inference from the facts alleged is that Beando knew that the police wanted to talk to Carcieri.

The plaintiff's bare conclusory allegations of a conspiracy to deprive her of her civil rights cannot survive a motion to dismiss. Accordingly, this Court should grant Beando and W-G's motion to dismiss the federal law claim stated in Count V of the plaintiff's complaint.

> **B.      Plaintiff Fails to Allege Sufficient Facts to Support the Allegation of Violation of Her Civil Rights Under the Massachusetts Civil Rights Law,**

This Court should dismiss Carcieri's state law civil rights violation (Count V) as she does not allege sufficient facts to support this claim against W-G and Beando, pursuant to Fed. R. Civ. P. 12(b)(6). The Massachusetts Civil Rights Act, Mass. Gen. Laws Ann. ch. 12 §§ 11H, 11*I*, provides civil redress to an individual "[w]henever any  person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion" with that individual's exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth. Mass. Gen. Laws Ann. ch. 12 §§ 11H, 11*I* (2005). Unlike 42 U.S.C. § 1983, the Massachusetts Civil Rights Act does not include state action as a required element of civil rights claims. See Sietins v. Joseph, 238 F. Supp. 2d 366, 377 (D. Mass. 2003).

To raise a claim under this statute, the plaintiff must prove that " (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Id. (quotations

49019.1

omitted).  The element of coercion, intimidation or threats is essential, as "[a] direct violation of civil rights is not, without a showing of coercive behavior, actionable."  Id. at 378.  Indeed, the Supreme Judicial Court, in interpreting the Act, stated, "the Legislature did not intend to create a vast constitutional and statutory tort," and that "the insertion by the Legislature of the requirement of threats, intimidation or coercion was specifically intended to limit liability under the Act."  Freeman v. Planning Bd., 419 Mass. 548, 565-566 (1995) (citations, internal quotations and brackets omitted) (emphasis added).

Carcieri's claim against Beando and W-G for violation of her civil rights under state law must be dismissed, as it fails to allege facts to support her claims.   As stated above, Carcieri's complaint may be read to assert that her right to be free from unreasonable search and seizure was violated by the actions of Beando and W-G.  Her complaint, fails to allege any coercive, threatening or intimidating actions on the part of either Beando or W-G.  The only allegations made against Beando and W-G are that Beando called Carcieri to come to W-G and that Beando begged Carcieri to confess her husband's involvement in the theft.  Neither of these actions amount to coercive or threatening behavior.  In fact, Carcieri's description of Beando's alleged pleading is anything but threatening behavior.  Accordingly, Carcieri's claim for violation of the Massachusetts Civil Rights Act must be dismissed.

In the event that the plaintiff is attempting to assert a conspiracy to violate Carcieri's civil rights under state law, she has not alleged sufficient facts to state such a claim. The Supreme Judicial Court has addressed the possible existence of such a claim once, and very briefly. In Gutierrez v. MBTA, the Court stated:   "To establish a civil conspiracy, a plaintiff must demonstrate that a combination of persons acted pursuant to an agreement to injure the plaintiff. .

. .  It is not sufficient to prove joint tortious acts of two or more persons." <u>Gutierrez v. MBTA</u>, 437 Mass. 396, 415-16 (2004).

In this case the plaintiff has failed to allege facts that could support the existence of an agreement to violate Carcieri's civil rights, as prohibited by Massachusetts law.  Accordingly, even under the most favorable interpretation of the plaintiff's allegations, her claim pursuant to Mass. Gen. Laws Ann. ch. 12 §§ 11H and 11*I* must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

> ### C.    Plaintiff's Common Law Tort Claims, Counts I, II and III, are Barred by the Massachusetts Workers' Compensation Statute, Mass. Gen. <u>Laws ch. 152 § 24</u>

This Court should dismiss all the common law tort claims brought by the plaintiff against defendants Beando and W-G because they are barred by the Massachusetts Workers' Compensation Act, Mass. Gen. Laws ch. 152 § 24 (2005).  The plaintiff Carcieri brings claims against defendants Beando and W-G for assault and battery (Count I), false arrest and imprisonment (Count II) and intentional affliction of emotional distress (Count III).  These claims are all common law tort claims that are alleged to have arisen in the course of Carcieri's employment at W-G.  Accordingly, they are all barred by the Massachusetts Workers' Compensation Act, Mass. Gen. Laws Ann. ch. 152 § 24 (2005).

"The Workers' Compensation Act precludes common law actions for both negligence and intentional torts that arise 'out of and in the course of employment.'" <u>Grant v. John Hancock Mutual Life</u>, 183 F. Supp. 2d 344, 364 (D. Mass. 2002).  "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." <u>Doe v. Purity Supreme,</u>

Inc, 422 Mass. 563, 566 (1996).  "Massachusetts courts construe this provision broadly . . . ."
Andresen v. Diorio, 349 F.3d 8, 16 (1st Cir. 2003).

The workers' compensation act has been explicitly found to cover the types of claims alleged by Carcieri in her complaint against Beando and W-G.  Carcieri makes claims for assault and battery, false arrest and imprisonment and intentional affliction of emotional distress.  These are all intentional torts, and are therefore all covered by the workers' compensation act.  Doe, 422 Mass. at 565 ("injuries resulting from physical assaults by one employee on another are compensable")[29]; Andresen, 349 F.3d at 16 ("the waiver covers intentional and negligent infliction of emotion distress . . .").

In the present case, the events forming the basis of Carcieri's allegations all arose out of her employment with W-G.  The interrogation, which is the only source of Carcieri's claims against Beando and W-G,  occurred at her place of employment.  It was incidental to Carcieri's employment as office manager, because in that role, she arrived early at the credit union and so, was the sole witness to the robbery.  Further, it is irrelevant that Carcieri was not working at the time of the interrogation.  "[T]he statute covers broadly any injury that arises out of the employment relationship regardless of whether it occurs during the precise period of employment."  Andresen, 349 F.3d at 16.

In addition, actions against coworkers are barred by the workers' compensation law, so long as the coworker was acting in the course of her employment.  Grant, 183 F. Supp. 2d at 365.

---

[29] In Doe v. Purity Supreme, 422 Mass. 563, the plaintiff, a store employee, was raped by the assistant store manager, during work hours.  The plaintiff argued that her suit against the store was not barred by the workers' compensation act because "sexual assault is not a 'normal risk' of employment."  Id. at 566.  The Supreme Judicial Court rejected that argument and stated that when determining whether a claim is barred by the workers' compensation law, it considers "the nature of the claims, not the source of the injuries."  Id.  The court found that injuries resulting from the sexual assault were compensable under the workers' compensation act, as they were "personal injuries" within the meaning of that act.  Id.  The court found further that this act arose out of the employment, as the employee and assistant manager were not "connected in any way except through their employment."  Id. at 566.

"Conduct of an agent is within the scope of employment if it is of the kind he is employed to perform . . .; if it occurs substantially within the authorized time and space limits . . .; and if it is motivated, at least in part, by a purpose to serve the employer . . . ." <u>Doe</u>, 422 Mass. at 568. "Courts must apply an 'objective test which assesses what the employee did and other facts in order to determine whether [the employee] acted at least in part for a job-related purpose.'" <u>Grant</u>, 183 F. Supp. 2d at 365.

Carcieri alleges her claims of assault and battery, false imprisonment and intentional infliction of emotional distress against Beando individually, as well as W-G. Beando's alleged conduct in relation to these claims, was within the scope of employment as it was motivated, at least in part, by a purpose to serve her employer, W-G. Beando, according to the plaintiff's allegations, called Carcieri and asked her to come to W-G. Beando then allegedly begged Carcieri to confess her husband's involvement in the theft. These actions were clearly motivated, at least in part, by a purpose to serve W-G, Beando's employer, in order to help determine the identity of the persons responsible for the robbery. As such, any claims arising from Beando's alleged conduct are barred by the workers' compensation act.

Any injury allegedly suffered by Carcieri as a result of W-G and Beando's alleged actions, be it emotional or physical injury, arose out of her employment. Consequently all of Carcieri's state law tort claims against W-G and Beando are barred by the workers' compensation act.

D.    **Plaintiff Fails to Allege Sufficient Facts to Support the Allegation of <u>Assault and Battery</u>**

Even if this Court finds that the state law tort claims are not barred by the exclusivity of the state workers' compensation law, this Court still should dismiss the plaintiff's claim against W-G and Beando for assault and battery (Count I) as it fails to state a claim upon which relief

can be granted. "Assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another." <u>Brisson</u>, 2005 U.S. Dist. LEXIS 26279 at 32. "An assault is either an attempted battery or putting another in fear of an immediately threatened battery." <u>Id</u>. at 33.

The only physical contact alleged is that which occurred between Carcieri and Beando when Beando allegedly grabbed Carcieri's ankles and begged her to confess her involvement in the theft. In the law enforcement context, "[a] claim for assault and battery cannot stand where the officer used no physical force and the arrestee suffered no physical injury." <u>Id</u>. This rubric should be carried over into the context of civil claims for battery, where, as here, the only contact alleged between Carcieri and Beando took place when Beando allegedly, in a mode of supplication, got down on her knees, put her hands around Carcieri's ankles, and begged her to confess her husband's involvement in the theft. This allegation is insufficient to support a claim of battery, where there was no use of force and no harm resulted from it to Carcieri.

"A claim for assault alone, however, does not require physical touching or physical injury." <u>Id</u>. Assault is attempted battery, or putting another in fear of an imminent battery. <u>Id</u>. Carcieri's claim for assault similarly fails, as Carcieri does not allege Beando attempted to batter her, or that Beando put Carcieri in fear of imminent battery. As stated above, Carcieri only alleges that Beando touched or spoke to Carcieri when she was pleading with Beando to confess her husband's crime. This act does not support a claim for assault or for battery under Massachusetts law. Accordingly, this Court should dismiss Count I against Beando and W-G for failure to state a claim upon which relief can be granted.

**E.    Plaintiff Fails to Allege Sufficient Facts to Support the Allegation of <u>False Arrest and Imprisonment</u>**

If this Court finds that the state law tort claims are not barred by the exclusivity of the state workers' compensation law, this Court should dismiss the plaintiff's claim against W-G and Beando for false arrest and imprisonment (Count II) as it fails to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12 (b)(6).

The elements of false arrest are: 1) "[that] the defendant intended to confine the plaintiff; 2) [that] the plaintiff was conscious of the confinement; 3) [that] the plaintiff did not consent to the confinement; and 4) [that] the defendant had no privilege to cause the confinement." <u>Felix v. Lugas</u>, 2004 U.S. Dist. LEXIS 15520, 24 (D. Mass 2004).   The elements of false arrest are indistinguishable from the elements of false imprisonment under Massachusetts law.   See <u>id.</u>; <u>Brisson</u>, 2005 U.S. Dist. LEXIS 26280 at 22 n.8.

The plaintiff's allegations do not support a claim for false arrest or imprisonment against Beando and W-G.  The only actions alleged on the part of Beando and W-G are 1) that Beando called Carcieri and asked her to come to the credit union, 2) that the police questioned Carcieri in the credit union and 3) that Beando begged Carcieri to admit her husband's involvement in the bank robbery.  As such, Count II of the plaintiff's claim, for false arrest and imprisonment, must be dismissed as against W-G and Beando, as the plaintiff fails to state a claim upon which relief can be granted.

**F.    Plaintiff Fails to Allege Sufficient Facts to Support the Allegation of <u>Intentional Infliction of Emotional Distress.</u>**

If this Court finds that the state law tort claims are not barred by the exclusivity of the state workers' compensation law, this Court should dismiss the plaintiff's claim against Beando

and W-G for intentional infliction of emotional distress (Count III) as it fails to state a claim upon which relief can be granted, as required by Fed. R. Civ. P. 12(b)(6).

> "In order to prevail on his claim of intentional infliction of emotional distress, a plaintiff must prove 1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; 2) that the defendant's conduct was extreme and outrageous; 3) that the defendant's conduct caused the plaintiff's distress; and 4) that the plaintiff suffered severe distress."

Sietins, 238 F. Supp. 2d at 379. The plaintiff has not alleged any of these elements in this case. As stated previously, the only allegations in this case directed towards Beando and W-G are 1) that Beando called Carcieri and asked her to come to the credit union, 2) that the police questioned Carcieri at the credit union and 3) that Beando begged Carcieri to confess her husband's involvement in the robbery.

There is no allegation that Beando intended to cause emotional distress, or should have known that her conduct would cause emotional distress. The plaintiff does not allege that Beando engaged in conduct that was extreme or outrageous, the only conduct alleged being the placing of the phone call, the use of the room in the credit union for the alleged interrogation and Beando's plea to Carcieri. "To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community. Liability cannot be founded upon mere insults, threats, or annoyances." Id. Clearly, Beando's conduct does not reach the level of extreme and outrageous.

Although Carcieri may allege that Beando's conduct, and by extension W-G's conduct, caused her to suffer extreme emotional distress, without facts to support the other elements of intentional infliction of emotional distress, her complaint must be dismissed. This Court should, therefore, dismiss the plaintiff's claim for intentional infliction of emotional distress against Beando and W-G because she has again failed to state a claim upon which relief can be granted.

### G.    This Court Should Grant Beando and W-G's Motion to Dismiss Counts I, II, III, and the State Law Claim in Count V, as State Law Claims Should be Decided by the State Court

In the event that this Court dismisses the plaintiff's claim against Beando and Carcieri under 42 U.S.C. § 1983 for failure to state a claim, but does not find the state tort claims barred by the workers' compensation statute, and does not dismiss the state law claims pursuant to Fed. R. Civ. P. 12 (b)(6), then this court should dismiss the state law claims against Beando and W-G in Counts I, II, III and V, for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

The plaintiff has invoked the supplemental jurisdiction of this Court to hear and decide her state law claims related to the federal claims.  Whether this Court retains jurisdiction over pendent state law claims after the federal jurisdictional foundation has been dismissed is left to its discretion.  See Roche v. John Hancock Mutual Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996).  "In deciding whether or not to retain jurisdiction on such an occasion, the trial court must take into account concerns of comity, judicial economy, convenience, fairness, and the like."  Id. at 257.  The court may also consider the progress made in the litigation of the state law claims. See id.

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stage of a suit, well before, the commencement of trial, will trigger the dismissal without prejudice of any supplemental state law claims."  Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).  "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."  Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251 (7th Cir. 1994).  This case does not depart from the norm.

17

Questions of comity include whether the issue of state law is particularly complex or novel, and so should be reserved for adjudication by state courts. See Williams v. Waldron, 14 F. Supp. 2d 1334, 1341 (N.D. Ga. 1998). The state law claim asserted in Count V may be construed as a claim for a conspiracy to violate Carcieri's civil rights under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11*I*. The Supreme Judicial Court has only spoken on this claim once, and briefly. See Gutierrez, 437 Mass. at 415-16. Therefore, the principles of comity weigh in favor of returning this claim to the state courts.[30]

As there has been little action concerning the private defendants, apart from the filing of the complaint and the service of process, the factor of judicial economy also weighs strongly in favor of dismissing the state court claims:

> [R]arely when a case is dismissed on the pleadings can "judicial economy" be a good reason to retain jurisdiction. There was very little federal judicial investment in this case. The defendants filed their motions to dismiss within two months after the case was filed, and the district court granted the motions to dismiss before discovery commenced. At this point, the burden of the state-law claims would be the same for a federal as for a state court. In these circumstances, judicial economy is not served by the district court's retention of jurisdiction.

Wright v. Associated Ins. Cos., 29 F.3d 1244, 1251 (7th Cir. 1994).

Because the factors of comity and judicial economy weigh in favor of dismissing the state law claims against Beando and W-G, this Court should not retain jurisdiction over them. Accordingly, this Court should grant Beando and W-G's motion to dismiss Counts I, II, III and V of the plaintiff's complaint, that is, all of the state law claims against them.

---

[30] If comity dictates that this claim be dismissed, then the three remaining state law claims, though resting upon settled state law, should be dismissed as well in the interests of avoiding duplicative litigation.

49019.1

V.    **Conclusion**

WHEREFORE, for the reasons given above, the defendants W-G and Beando respectfully request that this Court dismiss with prejudice Counts I, II, III and V of the plaintiff's complaint.

Dated: December 30, 2005                     Respectfully submitted,
                                             W-G Federal Credit Union and Deborah
                                             Beando, defendants,
                                             By their attorneys,


                                             /s/ William T. Bogaert
                                             _____
                                             William T. Bogaert, BBO #546321
                                             Julia E. Bell, BBO #661185
                                             WILSON ELSER MOSKOWITZ
                                             EDELMAN & DICKER  LLP
                                             155 Federal Street
                                             Boston, MA 02110
                                             (617) 422-5300



Certificate Of Service

        I, Julia E. Bell, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  I am not aware of any party who is a non registered participant, and therefore electronic filing is the sole means of service of this document.

                            /s/  Julia E. Bell___
                            JULIA E. BELL

49019.1