## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

George Labadie and
Susan Carcieri

               Plaintiffs,

v.

Daniel Rosario,
Stanley Carpenter,                                    Civil Action No. 05-40148 FDS
Brian Hackett,
W-G Federal Credit Union,
Deborah Beando,
John Doe 1,
John Doe 2,
John Doe 3,
John Doe 4,
John Doe 5, and
The City of Worcester,

               Defendants.

## DEFENDANTS W-G FEDERAL CREDIT UNION AND DEBORAH BEANDO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COME defendants W-G Federal Credit Union ("W-G") and Deborah Beando ("Beando") and submit the following Memorandum of Law in Support of their Renewed Motion to Dismiss Count V of the Plaintiff's Complaint.

> **I.**     **Defendants W-G and Beando are Entitled to Dismissal of the Counts Against Them Because the Plaintiff Does Not Allege Facts Sufficient to Support Her Claims**

70169.1

This Court should dismiss Count V against the defendants Beando and W-G because the plaintiff fails to state a claim upon which relief should be granted.[1]

Count V asserts an alleged violation of 42 U.S.C. § 1983 and an alleged violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H, 11*I*. Count V should be dismissed because the complaint does not assert a violation of any right protected by the Constitution of the United States or laws of the Commonwealth. Even if it could be read to contain such an assertion, Count V should be dismissed because the complaint does not allege the material elements of conspiracy, i.e., the complaint contains no facts supporting the allegation under 42 U.S.C. § 1983 that Beando or W-G conspired with the police to violate the plaintiff's civil rights. In addition, that portion of Count V asserting a violation of the Massachusetts Civil Rights act should be dismissed because the plaintiff fails to allege the threatening or coercive conduct required to state a claim under that statute.

Accordingly, Beando and W-G are entitled to dismissal with prejudice of the claims in Count V of the plaintiff's complaint.

## II.     Facts Alleged in the Complaint

The defendants W-G and Beando, for purposes of this motion only, take the well-plead facts in the plaintiff's complaint as true:

George Labadie ("Labadie") and Susan Carcieri ("Carcieri") are both residents of Worcester, Massachusetts.[2] Defendant W-G has a principal place of business in Massachusetts[3]

---

[1] Carcieri is the only plaintiff to bring a claim against Beando and W-G, therefore, in this memorandum she will be referred to as the sole plaintiff.

[2] Plaintiff's Complaint, ¶¶ 3-4.

[3] Id. at ¶ 13.

and defendant Beando resides in Worcester, Massachusetts.[4]  Defendant Beando is, and was at all times relevant to this complaint, manager of the credit union.[5]

Plaintiff Carcieri worked at W-G from 1994 until August 29, 2002.[6]  She was the office manager on August 27, 2002 when the credit union was robbed.[7]  Carcieri was the only person, apart from the thief, present in the credit union when the robbery occurred.[8]  On August 29, 2002, Carcieri received a phone call at home from Beando asking her to "come over to the Credit Union for a minute because I need your help."[9]  When Carcieri arrived at the credit union, she was grabbed by two police officers, identified in the complaint only as Doe 1 and Doe 2.[10] Carcieri was led by Doe 1 and Doe 2 past customers and tellers she knew and upstairs to a small room on the second floor of the building where Doe 3 was sitting at a desk.[11]

Doe 3 told Carcieri that he and Does 1 and 2 were all Worcester police detectives investigating the robbery at the credit union.[12]  Doe 3 ordered Carcieri to sit down.[13]  Doe 1 then walked to the door to the room and stood in front of it; Doe 2 stood next to the seated Carcieri.[14]

Carcieri twice requested that her attorney be contacted, but her requests were denied.[15] Carcieri also asked to be allowed to call her daughter, because Carcieri had agreed to pick up her grandchildren at school that day.[16]  Does 1-3 refused to let Carcieri make any phone calls.[17]

---

[4] Id. at ¶ 14.
[5] Id.
[6] Id. at ¶ 19.
[7] Id. at ¶ 21-23.
[8] Id.
[9] Id. at ¶ 27.
[10] Id. at ¶ 28.
[11] Id. at ¶ 29.
[12] Id.
[13] Id.
[14] Id.
[15] Id. at ¶ 30.
[16] Id. at ¶ 30.
[17] Id.

3

Does 1-3 interrogated Carcieri for approximately two and a half hours, yelling at her and threatening her.[18]

At 3:00 p.m., Carcieri again requested permission to call her daughter.[19]  Doe 1 took Carcieri downstairs to the phone and placed the call for her, refusing to let her speak to her daughter.[20]  Doe 1 then took Carcieri back up the stairs to the small room in which Does 2 and 3 were waiting.[21]  At approximately 3:30 p.m., Carcieri's daughter entered the room.[22]  Doe 3 handed Carcieri a phone and let her call her attorney, who advised her to leave immediately.[23]

While Carcieri was waiting in the small room for her daughter to pull the car around, Beando entered the room.[24]  Beando got on her knees, grabbed Carcieri by the ankles and "begged Carcieri to 'confess' that her husband, Labadie, had robbed the credit union."[25]  At all times relevant to the complaint, Does 1-3 were acting under color of state law.[26]

The plaintiff summarizes these allegations by claiming:

> Beando acting individually as well as within the scope of her authority as the Manager of the Credit Union, conspired with Doe 1, Doe 2 and Doe 3 to 'lure' Carcieri to the Credit Union where, without a warrant, she was, *inter alia*, but without limitation: assaulted, battered, placed under false arrest and imprisonment, subjected to conduct which was extreme and outrageous causing acute mental distress and deprived of other civil rights, including her right to counsel.[27]

## III.   Standard of Review

For the purposes of a Rule 12 (b)(6) motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the

---

[18] Id. at ¶ 32-33.
[19] Id. at ¶ 33.
[20] Id.
[21] Id. at ¶ 34.
[22] Id. at ¶ 35.
[23] Id.
[24] Id. at ¶ 36.
[25] Id. at ¶ 36.
[26] Id. at ¶ 38.
[27] Id. at ¶ 37.

plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Giuliano v. Fulton, 399 F. 3d 381, 386 (1st Cir. 2005) (quoting Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002)). Dismissal of a claim is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Though there is no longer a heightened pleading standard for civil rights cases, see Educadores Puertorriquenos v. Cesar Rey Hernandez, 367 F.3d 61, 66 (1st Cir. 2004), the plaintiff still must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery" to survive a motion to dismiss. Rivera-Carrero v. Cesar Rey-Hernandez, 2006 U.S. Dist. LEXIS 12658, *7 (D. P.R. 2006). "The Court need not accept bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like." Id. Eschewal of bald assertions and unsupportable conclusions "is merely an application of Rule 8(a)(2), not a heightened pleading standard uniquely applicable to civil rights claims." Educadores, 367 F.3d at 68.

## IV.    Argument

### A.    The Plaintiff Fails to Allege Sufficient Facts to Support an Allegation of Conspiracy to Violate Her Civil Rights Under 42 U.S.C. § 1983

The plaintiff fails to allege sufficient facts supporting an allegation that the private defendants, Beando and W-G, violated her civil rights under 42 U.S.C. § 1983. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . . .

42 U.S.C. § 1983 (2005). To establish a claim under § 1983, a plaintiff must first establish that a person, acting under color of state law, deprived the plaintiff of rights secured by the Constitution. <u>Tauvar v. Bar Harbor Congregation</u>, 633 F. Supp. 741, 747 (D. Me. 1985). "To establish a conspiracy claim under § 1983, plaintiff must 'prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right.'" <u>Rivera-Carrero</u>, 2006 U.S. Dist. LEXIS 12658, *8. "Plaintiff carries the burden of identifying the specific constitutional right infringed." <u>Id</u>. She has not met this burden.

The plaintiff has not alleged facts sufficient to support that a right guaranteed by the Constitution has been violated. The only constitutional right Carcieri explicitly alleges has been violated is her right to counsel.[28] There are two constitutional sources of the right of an accused to the advice of his or her attorney, neither of which apply in this case:

> The Sixth Amendment right to counsel attaches only upon the initiation of adversary judicial proceedings against the defendant, and thereafter the right applies to all critical stages of the prosecution, before, during, and after trial. . . . The Fifth Amendment guarantees a criminal suspect the right to counsel during custodial interrogation.

<u>Brisson v. New Bedford</u>, 2005 U.S. Dist. LEXIS 26280, 15-16 (D. Mass. 2005). As no formal charges had been initiated against Carcieri at the time she filed her complaint, the Sixth Amendment right to counsel is inapplicable. <u>See id</u>. at 16.

The right to counsel during custodial interrogation is rooted in the Fifth Amendment's protection from self-incrimination. <u>See Giuffre v. Bissell</u>, 31 F.3d 1241, 1256 (3d Cir. 1994) ("The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial

---

[28] Even under the standards of notice pleading, pursuant to Fed. R. Civ. P. 8(a)(2), the plaintiff must allege "who did what to whom, when, where, and why . . . ." <u>Educadores Puertorriquenos v. Cesar Rey Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004). Apart from the assertion that her right to counsel was violated, which is unsupportable as explained above, the plaintiff has not pleaded the essential element of "who did what."

interrogation recognized in Miranda v. Arizona, . . . , is merely a procedural safeguard, and not a substantive right.") (citation omitted). The Supreme Court has held that there is no private cause of action under 42 U.S.C. § 1983 for violation of a plaintiff's Fifth Amendment rights absent the use of plaintiff's statements at trial. See Chavez v. Martinez, 538 U.S. 760, 770-71, 777 (2003). Therefore, the Fifth Amendment right to counsel is also inapplicable in this case, as Carcieri does not allege that any statements she made in the course of the interrogation were used against her at trial or other adversarial proceeding. See id. at 770-71.

As neither "right to counsel" applies to the present circumstances, Carcieri has not pleaded facts sufficient to support an essential element of a § 1983 claim: a violation of a right protected by the Constitution.

Arguably, Carcieri's allegations of false arrest and imprisonment may be construed as a claim of a violation of her right to be free from unreasonable seizure under the Fourth Amendment. "The Fourth Amendment right to be free from unreasonable seizures of the person demands that [such a seizure] be supported by probable cause." Santiago v. Fenton, 891 F.2d 373, 383 (1st Cir. 1989). Whether an individual has formally been placed under arrest, or merely "seized" within the meaning of the Fourth Amendment, has no bearing on the issue of whether the seizure was reasonable. See Dunaway v. New York, 442 U.S. 200, 215 (1979).

"[Federal and state false arrest and imprisonment] claims brought under § 1983 are guided by the tort law of the forum state." Hall v. City of White Plains, 185 F. Supp. 2d 293, 299 (D.N.Y. 2002); see also Felix v. Lugas, 2004 U.S. Dist. LEXIS 15520, 28 (D. Mass. 2004). Massachusetts defines seizure as "an intentional acquisition of physical control [which] occurs only when there is a governmental termination of freedom of movement through means

intentionally applied."[29] Gutierrez, 437 Mass. at 401.  Accordingly, Carcieri's allegation that she was kept in a small room by the police officers and not allowed to leave, may be read as a claim under § 1983 that she was unreasonably seized in violation of her Fourth Amendment rights.

Even if the Court reads the plaintiff's complaint as alleging a violation of her Fourth Amendment rights, however, W-G and Beando are still entitled to dismissal as the plaintiff fails to allege the material element of her claim of conspiracy.

> A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Marcello v. State of Maine, 2006 U.S. Dist. LEXIS 77425, *19 (D. Me. 2006) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (emphasis added).  In order to survive a motion to dismiss, the plaintiff's complaint must set forth, as stated above, "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery" to survive a motion to dismiss.  Rivera-Carrero, 2006 U.S. Dist. LEXIS 12658, *7 (emphasis added).

Though the plaintiff is not held to any heightened pleading standards, she still must plead the material elements of conspiracy:  "an agreement between the parties to inflict a wrong against or injury upon another."  Marcello, 2006 U.S. Dist. LEXIS 77425, *19.    The plaintiff has failed to do so.

The facts alleged by the plaintiff to support her allegation of conspiracy between the Worcester police and Beando and the credit union are these: 1) that Beando called Carcieri and asked her to come to the credit union on August 29, 2002, 2) that the state actors interrogated

---

[29] Compare the definition of seizure under Massachusetts law with the definition of false arrest under Massachusetts law: "1) the defendant intended to confine the plaintiff; 2) the plaintiff was conscious of the confinement; 3) the plaintiff did not consent to the confinement; and 4) the defendant had no privilege to cause the confinement." Brisson v. City of New Bedford, 2005 U.S. Dist. LEXIS 26280, 23 (D. Mass. 2005).

Carcieri in a room at the credit union, and 3) that after several hours and once the interrogation was completed and Carcieri was waiting to be picked up by her daughter, Beando entered the room and asked Carcieri to confess her husband's involvement in the theft.

Though these allegations support the inference that Beando agreed to cooperate with the police in their investigation of the robbery, they do not and cannot support the claim that Beando entered into an agreement with the police specifically to violate the plaintiff's civil rights by denying her of her right to counsel or participating in her alleged unreasonable seizure. In fact, the plaintiff alleges no specific facts supporting such an agreement. Consequently the allegations are insufficient to support an allegation that Beando conspired with the police to accomplish the alleged violation of Carcieri's constitutional rights.

Instead, the allegations in the complaint demonstrate that Beando did not participate in any of the actions that deprived Carcieri of her rights. The complaint is void of any allegation that Beando knew that the police intended to detain Carcieri in a small room in the bank, or that she knew that the police intended to prevent Carcieri from having access to her lawyer during the period in which she was detained. There is not a single allegation in the case <u>sub judice</u> of how the state actors and private defendants carried out the alleged conspiracy. There is no allegation of concerted actions or cooperation. Finally, it is not reasonable to infer from the very limited allegations, that Beando knew the police were going to seize Carcieri. The only reasonable inference from the facts alleged is that Beando knew that the police wanted to talk to Carcieri.

As stated above, in evaluating whether a plaintiff has plead facts sufficient to survive a motion to dismiss, the Court must "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." <u>Educadores</u>, 367 F.3d at 68. Accordingly, this Court must not rely upon the plaintiff's unsupported assertion at paragraph 37 of her complaint that

70169.1

Beando "conspired with Doe 1, Doe 2 and Doe 3 to 'lure'" the plaintiff to the credit union.[30] The Court "need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim . . . nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion." Marcello, 2006 U.S. Dist. LEXIS 77425, *19-*20.   The statements in paragraph 37 are no more than an assertion that the allegations made satisfy the elements of conspiracy, and should not be accepted as allegations of fact by the Court.

Several courts in the First Circuit have addressed conspiracy claims under § 1983 in the wake of the Educadores decision, and have reach differing conclusions on the level of specificity required for a conspiracy claim to survive a motion to dismiss.  Some of the courts that have considered the issue have found that the bald assertion of a conspiracy is insufficient.  See Uphoff-Figueroa, 2005 U.S. Dist. LEXIS 30248, *44 (D. P.R. 2005) ("Simply stating that some of defendants' actions were part of a conspiracy to deprive him of his rights is insufficient."); Rivera-Carrero, 2006 U.S. Dist. LEXIS 12658, *9 ("Throughout the complaint, plaintiffs make a series of allegations of conspiracy, which are based on conclusory statements. . . .  The complaint lacks the necessary factual allegations to either directly or inferentially, establish the material elements of a civil rights conspiracy. . . .   Merely asserting that a conspiracy existed is insufficient to withstands defendants' motion to dismiss."); Pena-Borrero v. Estremeda, 365 F.3d 7, *11 (1st Cir. 2004) (upholding dismissal of claim for conspiracy "where conspiracy claim was thinly developed" and allegations were "wholly conclusory and inadequate").

At least one court, however, has ruled on a motion to dismiss a § 1983 conspiracy claim that "agreement between the conspirators – the glue of conspiracy – can be inferred from all of

---

[30] Even if this paragraph could be read as a specific factual allegation, which it cannot, it does not state that Beando conspired with the Doe defendants to violate the plaintiff's civil rights, which allegation is required under Fed. R. Civ. P. Rule 8(a)(2).

the factual circumstances alleged." <u>Charles v. City of Boston</u>, 365 F. Supp. 2d 82, *90 (D. Mass. 2005). The pro se plaintiff in <u>Charles</u> set forth "over seventy paragraphs of factual allegations, several of which specifically describe actions by [one of the defendants], detailing a series of mutually reinforcing actions undertaken by [the other defendants] before, during and after [the plaintiff's] prosecution." The Court found that based upon the extent of the detailed factual allegations contained in the complaint, the existence of a conspiracy to deprive the plaintiff of his civil rights could be inferred, though it had not been explicitly plead in the complaint.

This case is distinct from <u>Charles</u>, however, as the plaintiff, despite representation by counsel and an opportunity to amend her complaint, has not plead any detailed factual allegations that support the existence of a conspiracy to violate her civil rights. <u>See</u> <u>Marcello</u>, 2006 U.S. Dist. LEXIS 77425, *19 (the principal element of conspiracy "is an agreement between the parties to inflict a wrong against or injury upon another"). Accordingly, the plaintiff's complaint against Beando and W-G must be dismissed.

The plaintiff's bare conclusory allegations of a conspiracy to deprive her of her civil rights cannot survive a motion to dismiss. Accordingly, this Court should grant Beando and W-G's motion to dismiss the federal law claim stated in Count V of the plaintiff's complaint.

**B.**  **Plaintiff Fails to Allege Sufficient Facts to Support the Allegation of Violation of Her Civil Rights Under the Massachusetts Civil Rights Law,**

This Court should also dismiss Carcieri's state law civil rights violation as she does not allege sufficient facts to support this claim against W-G and Beando, pursuant to Fed. R. Civ. P. 12(b)(6). The Massachusetts Civil Rights Act, Mass. Gen. Laws Ann. ch. 12 §§ 11H, 11*I*, provides civil redress to an individual "[w]henever any person or persons, whether or not acting

under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion" with that individual's exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth.  Mass. Gen. Laws Ann. ch. 12 §§ 11H, 11*I* (2005).  Unlike 42 U.S.C. § 1983, the Massachusetts Civil Rights Act does not include state action as a required element of civil rights claims.  See Sietins v. Joseph, 238 F. Supp. 2d 366, 377 (D. Mass. 2003).

To raise a claim under this statute, the plaintiff must prove that " (1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."  Id. (quotations omitted).  The element of coercion, intimidation or threats is essential, as "[a] direct violation of civil rights is not, without a showing of coercive behavior, actionable."  Id. at 378.  Indeed, the Supreme Judicial Court, in interpreting the Act, stated, "the Legislature did not intend to create a vast constitutional and statutory tort," and that "the insertion by the Legislature of the requirement of threats, intimidation or coercion was specifically intended to limit liability under the Act."  Freeman v. Planning Bd., 419 Mass. 548, 565-566 (1995) (citations, internal quotations and brackets omitted) (emphasis added).

Carcieri's claim against Beando and W-G for violation of her civil rights under state law must be dismissed, as it fails to allege threats, intimidation or coercion on the part of those defendants.  As stated above, Carcieri's complaint may be read to assert that her right to be free from unreasonable search and seizure was violated by the actions of Beando and W-G.  The only allegations of actions taken by Beando and W-G are that Beando called Carcieri to come to W-G and that Beando begged Carcieri to confess her husband's involvement in the theft.  Neither of

these acts amount to coercive or threatening behavior.  In fact, Carcieri's description of Beando's alleged pleading is anything but threatening behavior.

The facts of this case are similar to those alleged in <u>Williams v. Brigham & Women's Hosp.</u>, 14 Mass. L. Rep. 438 (Mass. Super. Ct. 2002).  In <u>Williams</u>, the plaintiff alleged that several defendants violated her civil rights and so were liable under the Massachusetts Civil Rights Act.  In evaluating the plaintiff's claim against a particular defendant, a State Trooper named Forni, the Superior Court noted that there were no allegations of threats, intimidation or coercion by Forni against the plaintiff:

> The only statement which arguably could support this cause of action – the statement Forni allegedly made to Williams in front of others urging her to confess because the evidence against her was "strong," does not rise to the level of threats, intimidation or coercion as required to support [a] claim under the Massachusetts Civil Rights Act.

Similarly, in this case, there are no allegations of threatening, intimidating or coercive behavior by Beando or W-G.  The plaintiff only alleges that the interrogation took place at the credit union and that Beando begged her to confess her involvement in the crime after the interrogation had ended.   These facts do not amount to allegations of threats, intimidation or coercion and accordingly do not support a claim for a violation of the Massachusetts Civil Rights Act.

In addition, the actions of the police defendants cannot be attributed to Beando and W-G for purposes of the Massachusetts Civil Rights Act.  Of the facts alleged by the plaintiff, only two support the notion of cooperation between the police and Beando and W-G:  that Beando asked Carcieri to go to W-G and that W-G allowed the police to use a room on its premises while interviewing Carcieri.  While these facts may support that W-G and its employee assisted the police in the <u>investigation</u> of the robbery, they do not support that W-G and its employee assisted the police in any subsequent violation of the plaintiff's civil rights.   Indeed, if a victim's

70169.1

cooperation with the police to the limited extent alleged here, exposes the victim to liability for civil rights violations, the police will find their investigations much more difficult and victims will have to tread carefully in their desire to see perpetrators apprehended.

In the event that the plaintiff is attempting to assert a conspiracy between the police defendants and Beando and W-G to violate Carcieri's civil rights under state law, she has not alleged sufficient facts to state such a claim. The Supreme Judicial Court has addressed the possible existence of such a claim once, and very briefly. In <u>Gutierrez v. MBTA</u>, the Court stated: "To establish a civil conspiracy, a plaintiff must demonstrate that a combination of persons acted pursuant to an agreement to injure the plaintiff. . . . It is not sufficient to prove joint tortious acts of two or more persons." <u>Gutierrez v. MBTA</u>, 437 Mass. 396, 415-16 (2004).

As argued in greater detail above, the plaintiff has failed to allege facts that could support the existence of an agreement to violate Carcieri's civil rights, as prohibited by Massachusetts law. Accordingly, even under the most favorable interpretation of the plaintiff's allegations, her claim pursuant to Mass. Gen. Laws Ann. ch. 12 §§ 11H and 11*I* must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### V.    <u>Conclusion</u>

WHEREFORE, for the reasons given above, the defendants W-G and Beando respectfully request that this Court dismiss with prejudice Count V of the plaintiff's complaint.

Dated: December 15, 2006                              Respectfully submitted,
                                                                       W-G Federal Credit Union and Deborah
                                                                       Beando, defendants,
                                                                       By their attorneys,


                                                                       /s/ William T. Bogaert
                                                                       _____
                                                                       William T. Bogaert, BBO #546321

Julia Bell Andrus, BBO #661185
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER  LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

Certificate Of Service

I, Julia Bell Andrus, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  I am not aware of any party who is a non registered participant, and therefore electronic filing is the sole means of service of this document.

/s/ Julia Bell Andrus
JULIA BELL ANDRUS

15

70169.1