**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

George Labadie and
Susan Carcieri

Plaintiffs,

v.

Daniel Rosario,
Stanley Carpenter,
Brian Hackett,
W-G Federal Credit Union,
Deborah Beando,
John Doe 1,
John Doe 2,
John Doe 3,
John Doe 4,
John Doe 5, and
The City of Worcester,

Defendants.

Civil Action No. 05-40148 FDS

**DEFENDANTS W-G FEDERAL CREDIT UNION AND DEBORAH BEANDO'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFFS TO SUBMIT TO DEPOSITIONS AND ANSWER INTERROGATORIES OR IN THE ALTERNATIVE MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND ALLOW AN ADVERSE INFERENCE AGAINST THE PLAINTIFFS IN W-G'S COUNTERCLAIM**

Now come the defendants, W-G Federal Credit Union ("W-G") and Deborah Beando ("Beando") submit this memorandum of law in support of their motion to compel plaintiffs to submit to depositions and answer interrogatories, or in the alternative, to dismiss the plaintiffs' complaint and allow W-G to draw an adverse inference against the plaintiffs in its counterclaim.

I. Introduction[1]

[1] The following facts are taken from the complaint, except where noted.

This case arises from the robbery of W-G on August 27, 2002. Plaintiff Susan Carcieri ("Carcieri") was the only person present when the robbery occurred, apart from the assailant. On August 29, 2002, Carcieri received a phone call at home from Beando asking her to come to the credit union. When Carcieri arrived at the credit union, she was interviewed by two Worcester police officers in a small room upstairs at the credit union. At some point during this interview, Beando entered the room to speak to Carcieri.[2] The plaintiffs allege that Beando asked Carcieri to confess Labadie's role in the robbery. Carcieri left the interview when her daughter arrived to pick her up.

The Worcester police continued to investigate Carcieri and Labadie for the robbery of the credit union. In the course of the investigation, the police searched Carcieri and Labadie's home pursuant to a search warrant. The police seized $22,000.00 in cash from the premises, as well as other property, during the search.

On August 29, 2005, Carcieri and Labadie filed suit in this court alleging violations of their civil rights under 42 U.S.C. § 1983 and violation of Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 §§ 11H, 11*I*.[3] Carcieri specifically alleges that W-G and Beando conspired with members of the Worcester police department to deprive her of her civil rights. W-G filed a counterclaim against the plaintiffs alleging conversion of the funds taken from the credit union during the robbery.

Carcieri has refused to respond to discovery requests, however, regarding the events of August 29, 2002. The plaintiffs have refused to answer interrogatories (Carcieri's Answers to Interrogatories from W-G and Beando are attached as Exhibit 1) or to submit to depositions. The plaintiffs assert their privilege against self-incrimination based upon the Fifth Amendment. The

---

[2] Beando believed that Carcieri's husband, plaintiff George Labadie ("Labadie") was somehow involved with the robbery of the credit union. (This fact is not contained in the complaint.)

[3] Carcieri's other allegations against W-G and Beando have all been dismissed by this court.

plaintiffs have refused to provide the most basic information relating to the complaint or counterclaim, as is demonstrated by the following answers to interrogatories by Carcieri:

Interrogatory No. 3:

Please describe in full and complete detail your activities and whereabouts from 12:00 a.m. until 10:00 p.m. on August 27, 2002, identifying in your answer the name and address of each person who was in your presence during that time period on that day.

RESPONSE:

Objection: the responding party, on the advice of her attorney in a criminal case, declines to respond at this time based on her 5th amendment privileges. She reserves the right to supplement this response.

Interrogatory No. 4:

Please state in full and complete detail all facts upon which you rely in support of your claim of conspiracy to violate your civil rights in Count V of the Complaint.

RESPONSE:

Objection: Requires legal analysis and judgment. Also, the responding party, on the advice of her attorney in a criminal case, declines to respond at this time based on her 5th amendment privileges. She reserves the right to supplement this response.

Interrogatory No. 5:

Please describe each and every conversation or communication you had with members or officers of the Worcester Police Department on August 28, 2002. For each conversation or communication:

- identify the members or officers of the Worcester Police Department with whom you had the conversation or communication;
- state where each conversation occurred, or if it was over the phone where you were located at the time;
- describe in detail the substance of each conversation;
- and state who was present for each conversation or received each communication.

RESPONSE:

Objection: The responding party, on the advice of her attorney in a criminal case, declines to respond at this time based on her 5th amendment privileges. She reserves the right to supplement this response.

Interrogatory No. 6:

Please describe each and every conversation or communication you had with employees of W-G Federal Credit Union, including Deborah Beando, on August 28, 2002. For each conversation or communication:

- identify the employee of W-G Federal Credit Union with whom you had the conversation or communication;
- state where each conversation occurred, or if it was over the phone where you were located at the time;
- describe in detail the substance of each conversation;
- and state who was present for each conversation or received each communication.

RESPONSE:

Objection: Requires legal analysis and judgment. Also, the responding party, on the advice of her attorney in a criminal case, declines to respond at this time based on her 5th amendment privileges. She reserves the right to supplement this response.

Interrogatory No. 12:

Please state with specificity all facts upon which you rely in making your claim that you suffered post-traumatic stress disorder as a result or arising out of the incident of August 27, 2002.

RESPONSE:

Objection: The responding party, on the advice of her attorney in a criminal case, declines to respond at this time based on her 5th amendment privileges. She reserves the right to supplement this response.

Interrogatory No. 13:

Please state with specificity all facts upon which you rely in making your claim that you suffered emotional distress as a result of or arising from the incident of August 27, 2002.

RESPONSE:

> Objection: The responding party, on the advice of her attorney in a criminal case, declines to respond at this time based on her 5th amendment privileges. She reserves the right to supplement this response.

Without this information, W-G and Carcieri will not be able to defend themselves against the complaint brought by the plaintiffs. If the plaintiffs are not ordered to provide this information and submit to depositions, then their complaint must be dismissed, as the result will effectively deprive the defendants of their constitutional right to discovery in the defense of this litigation. In addition, this Court should allow W-G to draw an adverse inference against the plaintiffs, for their refusal to testify regarding their role in the robbery of the credit union.

II. The Plaintiffs Cannot Use the Fifth Amendment Privilege as a Sword and a Shield

The Fifth Amendment "guarantees the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence." Serafino v. Hasbro, Inc., 82 F.3d 515, 517 (1st Cir. 1996) (internal quotation marks omitted).[4] "The concept of penalty includes the imposition of any sanction which makes the assertion of the Fifth Amendment privilege costly." Id. (internal quotation marks omitted).

The First Circuit Court of Appeals has addressed the assertion of the Fifth Amendment privilege by a civil plaintiff and has found that dismissal of an action in such a case can be appropriate. Id. at 518. In Serafino v. Hasbro, the plaintiff George Serafino brought suit for employment discrimination after he was fired from Hasbro. During his deposition, Serafino, refused to answer questions regarding his alleged involvement in a bribery scheme involving employees of Hasbro and several entities controlled by Serafino which had lucrative contracts with Hasbro. On the defendant's motion, the district court dismissed Serafino's lawsuit upon the

[4] For clarity, the First Circuit court of Appeals decision is referred to as "Serafino." The U.S. District Court for the District of Massachusetts's decision in the same case is referred to as "Serafino I."

grounds that he refused to answer questions regarding the scheme, which the defendant in turn asserted was the basis for its decision to fire him. The First Circuit upheld the dismissal.

In its analysis, the First Circuit stated:

> [I]n the civil context, where, systemically, the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding. In other words, while a trial court should strive to accommodate a party's Fifth Amendment interests, it also must ensure that the opposing party is not unduly disadvantaged.

Id. at 518. The First Circuit endorsed the balancing test adopted by the Fifth Circuit, to be applied in such situations:

> We reiterate that the balance must be weighted to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side. . . . '[T]he Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining it.'

Id. (citation omitted).

The First Circuit identified three factors in the balancing test in Serafino: 1) whether the alleged illegal conduct was central to the defendants' case; 2) whether there was any effective substitute for the plaintiff's answers; and 3) whether there was an adequate alternative, apart from dismissal of the suit. Id. at 518. Applying the holding of Serafino to the present case requires the Court to balance the defendants' need for the evidence withheld by the plaintiffs and the plaintiffs' rights under the Fifth Amendment. The three factors applied in Serafino are applicable here as well and they demonstrate that the plaintiffs' complaint should be dismissed, and that an adverse inference should be drawn from the plaintiffs' refusal to provide information relating to W-G's counterclaim.

The first factor weighs the importance of the alleged illegal conduct to the defense of the case. The alleged illegal conduct participated in by the plaintiffs is central to the both the defense of Cariceri's claim for civil rights conspiracy and to W-G's counterclaim for conversion.

Carcieri has accused W-G and Beando of conspiring to violate her civil rights in connection with the investigation into the bank robbery. One of the central issues in the plaintiffs' case is whether the Worcester police, W-G and Carcieri did in fact violate the plaintiffs' civil rights. In order to determine if the plaintiffs' civil rights were violated, the parties must determine whether certain aspects of the police investigation, including the interview of Carcieri, were executed in accordance with the law. That is, the parties must be able to examine all aspects of the police investigation, including the evidence of the underlying crime, to determine whether the investigation was carried out properly.

The defendants must be able to inquire about the plaintiffs' interviews with police, the plaintiffs' ability to contact their attorneys during these interviews, the execution of the search warrant, and the items seized during the search of the plaintiffs' home. The plaintiffs, by bringing this lawsuit, have put the issues of the robbery and the investigation of the robbery squarely before this court and these issues are central to the resolution of this case. In addition, the plaintiffs allege in their complaint that they had no involvement with the robbery. After bringing these issues to the forefront, the plaintiffs cannot now hide behind the Fifth Amendment. See Serafino v. Hasbro, Inc., 893 F. Supp. 104, 108 (D. Mass. 1995) (hereinafter Serafino I) (noting that the plaintiff "cannot initiate a lawsuit and then hide behind the Fifth Amendment when the defendants seek facts relevant and necessary to their defense.")

In addition, it hardly bears mention that the conduct alleged in the criminal case against the plaintiffs is identical to that alleged in W-G's counterclaim for conversion against the

plaintiffs. W-G is entitled to pursue its counterclaim against the plaintiffs, and further, is entitled to seek discovery of the plaintiffs while doing so. (While the plaintiffs are entitled to raise the Fifth Amendment privilege in their defense of W-G's counterclaim, they do so at risk, as a negative inference from the assertion of the Fifth Amendment privilege is permissible in a civil lawsuit.) Accordingly, the application of the first factor shows that the assertion of the Fifth Amendment privilege by the plaintiffs significantly burdens W-G and Beando in their defense of Carcieri's claims and burdens W-G in its pursuit of its counterclaim against the plaintiffs.

The second factor inquires as to whether the evidence being withheld can be gathered from some alternative source. In this situation, the plaintiffs' testimony and interrogatory answers are vital to W-G and Carcieri's defense . The plaintiffs are alleging violation of their civil rights in connection with the investigation of the robbery of the credit union. As the plaintiffs' claims relate to their unique civil rights, much of the information pertaining to the defense of these claims is known by the plaintiffs and by them alone. For example, only the plaintiffs can explain their contact with their attorneys during any questioning by the police. Only the plaintiffs can discuss the origin of the cash and other property seized by the police during a search of their house, <u>and which they are demanding be returned</u>. The nature of the claims raised by the plaintiffs require that they provide testimony in support of them. There is no feasible alternative source for this evidence.

In addition, the plaintiffs' testimony is equally important to W-G's counterclaim. There is circumstantial evidence to support the defendants' theory that the plaintiffs were in fact responsible for the robbery of the credit union. This evidence includes the records from the plaintiffs' creditors, including credit card companies, the Massachusetts Lottery Commission and records from the plaintiffs' gas station and roofing business. It is the defendants' expectation

that this evidence will show that the plaintiffs were able to pay certain sizeable debts after the robbery, that they were unable to pay prior to the robbery. This paper trail is helpful, but is a "poor proxy" for the live testimony of the plaintiffs. See Serafino, 82 F.3d at 519. The plaintiffs are the only direct source of evidence as to their involvement in the robbery, and W-G is entitled to question them regarding this evidence. Accordingly, the second factor of the First Circuit's balancing test also demonstrates the burden placed upon Carcieri and W-G in their defense against the plaintiffs' complaint, and W-G's prosecution of its counterclaim.

The third factor in the balancing test is whether there is an adequate alternative to dismissal of the plaintiffs' lawsuit. Other courts examining this issue have discussed the viability of two alternatives to dismissal: allowing an adverse inference instruction against the plaintiffs due to their refusal to testify, see Cowans v. City of Boston, 2007 U.S. Dist. LEXIS 215, *4 (D. Mass. 2007), and instituting a stay of the proceedings until any potential criminal liability is resolved, see Serafino I, 893 F. Supp. at 108.

An adverse inference instruction may be appropriate, but would be inadequate, in response to the plaintiffs' complaint. An adverse inference against the plaintiffs on all of the topics on which they refuse to testify would result in a judgment for the defendants on the plaintiffs' claims. Carcieri, in her answers to interrogatories refuses even to disclose the facts upon which she relies in support of her claim of conspiracy to violate her civil rights. (See Interrogatory No. 4) Carcieri bears the burden of proof on her claim for conspiracy to violate her civil rights, and if she has no facts to support this claim, as her silence would suggest, W-G and Beando would be entitled to summary judgment thereon. As a result of her failure to respond to interrogatories, however, this court could adopt the inference that Carcieri in fact has no facts to support her claim, meaning she is unable to bear her burden of proof.

In addition, the facts alleged in the complaint regarding the events surrounding the robbery cannot be used to support the plaintiffs' claims now. This is because since making those allegations, the plaintiffs have raised the Fifth Amendment privilege in response to attempts by the defendants to investigate those allegations further. The plaintiffs should not be allowed to raise the privilege selectively. Once it is waived, the privilege cannot be asserted later. See Cowans v. City of Boston, 2007 U.S. Dist. LEXIS 215 at *8.

A stay is not appropriate in the plaintiffs' case in chief, as it would create an unacceptable delay, possibly of several years; five years have already passed since the robbery. A delay of this length would place an undue hardship on the defendants, who will suffer under the continued shadow of this litigation in the meantime. The defendants are entitled to their day in court to defend this lawsuit, or to be at peace and have the suit dismissed.

An adverse inference would be appropriate in W-G's counterclaim against the plaintiffs. In Cowans, the District Court entered an adverse inference against one of the defendants based upon his refusal to answer questions at his deposition. Cowans, 2007 U.S. Dist. LEXIS 215, *2. (The defendant in question was under suspicion of having intentionally concealed the results of a fingerprint identification, leading to the plaintiff's incarceration for a crime he did not commit.) Id. at *2. The District Court found that an adverse inference was appropriate and granted it to the requesting plaintiff. Id. at *7. An adverse inference is equally appropriate in this case, as the plaintiffs have refused to provide the information necessary to allow the case to proceed, yet cannot be forced to do so. Mitchell v. United States, 526 U.S. 314, 328 (1999) ("In ordinary civil cases, the party confronted with the invocation of the privilege by the opposing side has no capacity to avoid it, say, by offering immunity from prosecution. The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default,

accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed.")

Should this Court choose not to dismiss the plaintiffs' claims against W-G and Beando, the plaintiffs cannot be allowed to raise the Fifth Amendment privilege now and then win a tactical advantage by providing testimony later in this case. See Cowans, 2007 U.S. Dist. LEXIS 215 at *8. The plaintiffs must be held to the privilege throughout the case. Id.

The three factors that make up the balancing test espoused by the First Circuit in its Serafino decision all weigh in favor of dismissing Carcieri's claims against W-G and Beando. In addition, the Serafino factors also support a negative inference being drawn against the plaintiffs in W-G's counterclaim.

## III. Conclusion

For the reasons stated above, W-G and Beando move this court to order the plaintiffs to respond to discovery requests and submit to depositions, or in the alternative, dismiss Carcieri's complaint against them, as the plaintiffs' refusal to do so deprives the defendants of the opportunity to defend themselves. In addition, W-G moves this court to allow a negative inference against the plaintiffs in W-G's counterclaim for their refusal to respond to discovery and submit to depositions.

Dated: May 25, 2007

Respectfully submitted,
W-G Federal Credit Union and
Deborah Beando
By their attorneys,

/s/ William T. Bogaert
William T. Bogaert, BBO #546321
Julia E. Bell, BBO #661185
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

155 Federal Street,
Boston, Massachusetts 02215
617-422-5300

Certificate Of Service

I, William T. Bogaert, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). I am not aware of any party who is a non registered participant, and therefore electronic filing is the sole means of service of this document.

/s/ William T. Bogaert
William T. Bogaert