UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE LABADIE and SUSAN CARCIERI, ) ) ) )  Plaintiffs, ) ) v.                         ) ) DANIEL ROSARIO, STANLEY   ) CARPENTER, BRIAN HACKETT, W-G ) FEDERAL CREDIT UNION, DEBORAH ) BEANDO, JOHN DOE 1, JOHN DOE 2, ) JOHN DOE 3, JOHN DOE 4, JOHN DOE 5, ) and THE CITY OF WORCESTER,       ) ) Defendants.              ) | Civil Action No. 05-40148-FDS |

**MEMORANDUM AND ORDER ON MOTION OF DEFENDANTS
TO COMPEL AND MOTION OF PLAINTIFFS FOR A PROTECTIVE ORDER**

**SAYLOR, J.**

This is a civil rights action arising out of the investigation, questioning, and detention of a credit union employee and her husband by City of Worcester police officers. The events at the heart of this case are very much in dispute. Plaintiff Susan Carcieri contends that the credit union was robbed by an assailant who attacked her, tied her up, and fled with the money. Defendants contend that Carcieri and her husband, George Labadie, in fact stole the funds. Both Carcieri and Labadie are under indictment in state court for fraudulent conversion of the funds and related charges.

Carcieri and her husband, plaintiff George Labadie, have sued the City of Worcester, eight of its police officers, the W-G Federal Credit Union, and the credit union's manager, Deborah Beando, for damages, contending that they suffered various forms of mistreatment during the

investigation. Defendant W-G Federal Credit Union has filed a counterclaim for conversion.

The present issue involves a direct clash between the constitutional right of a criminal defendant to assert a Fifth Amendment privilege to remain silent and the legal rights of a civil litigant to obtain discovery and to have an action resolved within a reasonable period of time. Even though the theft occurred more than five and one-half years ago, the criminal case has not yet been resolved. Defendants have been unable to obtain discovery from plaintiffs in this action, which itself is now more than two years old.

Defendants W-G and Beando have moved to compel plaintiffs to provide discovery or, in the alternative, to dismiss the complaint and to allow an adverse inference against plaintiffs in the counterclaim. Plaintiffs have cross-moved for a protective order that in effect imposes a temporary stay of discovery. For the following reasons, this action will be stayed for six months or until the pending criminal case is resolved, whichever is earlier. The Court will review the matter again in six months to ascertain whether continuation of the stay is appropriate.

## I.   Background

According to the complaint, Susan Carcieri was opening the W-G Federal Credit Union for business on the morning of August 27, 2002, when she was grabbed from behind by an unknown assailant who then tied her up, robbed the credit union, and fled with the money. Carcieri was questioned by police that day and then released. Two days later, on August 29, Deborah Beando, the manager of the credit union, summoned Carcieri to her office, where police were waiting to detain and question her. After approximately three hours of questioning, she was allowed to leave. That same day, police detained and questioned George Labadie, Carcieri's husband. They also obtained a search warrant and searched plaintiffs' home, both damaging and confiscating various items of property.

Plaintiffs filed a complaint on August 29, 2005, alleging various state and federal causes of action, including claims under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H and 11I, against all defendants.[1]  W-G filed a counterclaim for conversion, alleging that plaintiffs were in fact responsible for the theft of the funds.

On November 10, 2005—more than three years after the events in question—plaintiffs were indicted in Worcester Superior Court on various crimes relating to the theft of funds from the credit union.  In substance, the Commonwealth alleges that Carcieri and Labadie possessed forged or counterfeit notes with the intent to defraud and that Carcieri fraudulently converted the credit union's funds.  The reason for the lengthy delay in bringing criminal charges is not set forth in the record.  For similarly unknown reasons, the criminal case has been pending for more than two years without disposition.[2]

Because of the pending criminal charges, plaintiffs have refused to participate in depositions or to answer interrogatories in this action relating to their activities on the date of the robbery, asserting their Fifth Amendment privilege against self-incrimination.  Discovery from plaintiffs in this matter has been effectively stayed since it was filed nearly two and one-half years ago.

Pending before the Court is a motion by defendants W-G and Beando to compel plaintiffs to submit to depositions and answer interrogatories or, in the alternative, to dismiss the complaint and to allow an adverse inference against plaintiffs in the counterclaim.  Defendants

---

[1] Plaintiffs' claims for assault and battery (Count I), false arrest and imprisonment (Count II) and intentional and/or negligent infliction of emotional distress (Count III) were dismissed as against W-G and Beando by this Court's order dated June 22, 2006.

[2] At least some part of the delay has been caused by a disagreement between one of the defendants and his counsel.

contend they are entitled to inquire into plaintiffs' activities at the time of the robbery because plaintiffs have put these events squarely at issue in this case. W-G also contends it is entitled to inquire into plaintiffs' role in the theft of its funds to support its conversion counterclaim. In response, plaintiffs have moved for a stay of this action pending the disposition of the state criminal actions or, in the alternative, for a protective order temporarily barring further discovery pursuant to Fed. R. Civ. P. 26(c).

## II.  Analysis

As a general matter, a person is entitled to assert a Fifth Amendment right to remain silent and "suffer no penalty" for such silence. *Spevack v. Klein*, 385 U.S. 511, 514 (1967). Among the impermissible "penalties" is "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* at 515.

However, "[n]ot every undesirable consequence which may follow from the exercise of the privilege against self-incrimination can be characterized as a penalty." *Flint v. McMullen*, 499 F.2d 100, 104 (1st Cir. 1974). Indeed, under certain circumstances, a court may dismiss a civil claim based on a party's invocation of his or her Fifth Amendment rights. *See Serafino v. Hasbro, Inc.*, 82 F.3d 515, 518 (1st Cir. 1996). In a civil case, "one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding." *Id.* Thus, the Court must "strive to accommodate a party's Fifth Amendment interests," while also ensuring that "the opposing party is not unduly disadvantaged." *Id.* (citations omitted).[3]

---

[3] As a general matter, "a federal suit for damages under § 1983 *must* be stayed pending completion of a parallel criminal prosecution in state court if the validity of the state criminal charge is a necessary issue in the federal suit." *Manning v. Tefft*, 839 F. Supp. 126, 128 (D.R.I. 1994) (*citing Guerro v. Mulhearn*, 498 F.2d 1249, 1255 (1st Cir. 1974)); *see Deakins v. Monaghan*, 484 U.S. 193, 202 (1988); *Rossi v. Gemma*, 489 F.3d 26, 38 (1st Cir. 2007) ("When a court orders abstention on a [§ 1983] damages claim, it ordinarily may only stay the action, rather than dismiss the action in its entirety.").

The conflict between the Fifth Amendment privilege and the requirement to provide pretrial discovery is particularly stark when the party invoking the privilege is the plaintiff.

> The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue. To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword.

*Wehling v. Columbia Broad. Sys., Inc.*, 608 F.2d 1084, 1087 (5th Cir. 1979) (citations omitted). Nonetheless, the extraordinary sanction of dismissal is a remedy of last resort, to be employed only where necessary to achieve a fair result. *See id.* at 1087 n.6.

The First Circuit has set forth a three-factor test for determining the proper balance to be struck in assessing the competing interests when a party asserts his or her Fifth Amendment privilege in a civil case. *Serafino,* 82 F.3d at 518. The three factors the court must consider are: (1) whether the information sought to be protected is central to the defense of the case; (2) whether there is any effective substitute for responses from the party asserting the privilege; and (3) whether there is an adequate alternative remedy to dismissal of the lawsuit. *Id.* The First Circuit has cautioned that "the balance must be weighed to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more than necessary to prevent unfair and unnecessary prejudice to the other side." *Id.* (citations omitted).

### A. Importance of Information Sought

The first factor under the balancing test is whether the information sought to be protected is central to the case. There is no question that the testimony of the plaintiffs is at the absolute heart of this dispute. In order both to defend themselves and to prosecute their counterclaim, defendants must be permitted to examine plaintiffs' version of events. Indeed, it is difficult to conceive how the lawsuit could proceed in any other manner.

### B. Effective Substitute For Plaintiffs' Answers

The second factor requires the Court to consider whether the evidence being withheld can be effectively obtained from an alternate source. Here, plaintiffs have refused to provide deposition testimony and to answer interrogatories requesting, among other things, plaintiffs' version of events and the basis for their claim of damages. Much of this requested information is obviously known only by plaintiffs and cannot be discovered from other sources. Accordingly, there is no effective substitute for discovery responses from the plaintiffs.

### C. Adequate Alternative to Dismissal

The final factor is whether there is an adequate alternative remedy to dismissal. Alternative remedies considered by courts include an order compelling a witness to answer if there is an improper assertion of the privilege, giving an adverse inference instruction against the party asserting the privilege, or temporarily staying the proceedings. *In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003); *Serafino*, 82 F.3d at 519; *Wehling*, 608 F.2d at 1088-89; *Cowans v. City of Boston*, No. 05-CV-11574, 2007 WL 28419, at *1-2 (D. Mass. Jan. 4, 2007). In substance, defendants contend that the only adequate remedies in this case are to compel plaintiffs to provide discovery or to dismiss the action. Plaintiffs contend that a temporary stay is an appropriate and adequate alternative remedy.

#### 1. Order Compelling Discovery

Defendants request that the Court compel plaintiffs to testify in depositions and answer interrogatories. This Court, however, has no authority to compel plaintiffs to disclose information protected by their Fifth Amendment privilege. *See Serafino*, 82 F.3d at 519; *Wehling*, 608 F.2d at 1087. That alternative is therefore plainly inappropriate.

### 2. Request for Adverse Inference

A further alternative is to instruct the jury that they may draw an adverse inference from the plaintiffs' silence. "While the law does not forbid adverse inferences against civil litigants who refuse to testify on Fifth Amendment grounds . . . it does not mandate such inferences." *In re Carp*, 340 F.3d at 23 (citations omitted). Here, defendants contend that an adverse inference would be insufficient unless the Court instructs the jury that Carcieri has "no facts to support her claim."[4] The Court sees no point in allowing the case to proceed to trial only to instruct the jury that Carcieri can present no facts to support her case. Accordingly, a jury instruction concerning an adverse inference is not an appropriate remedy under the circumstances of this case.

### 3. Staying the Proceeding

The third alternative to dismissal is a continued stay. Plaintiffs contend that a further stay of this action until the disposition of the state criminal action is an adequate alternative and will result in the disposition of this case on the merits without prejudice to either party. Plaintiffs presumably anticipate that the criminal actions will be resolved one way or another relatively soon. Defendants contend that the delay caused by a further stay would place an undue hardship on them.

The Court is certainly sympathetic to defendants' claims of hardship. The pendency of a lawsuit imposes substantial costs and burdens—financial, emotional, and otherwise. Furthermore, the Court cannot assume that defendants have done anything wrong; it seems fundamentally unfair not to permit them to conduct discovery or defend themselves during the two and one-half years this lawsuit has been pending. Worse, plaintiffs waited nearly three years

---

[4] W-G and Beando also contend that an adverse inference would be appropriate in their counterclaim against plaintiffs, but only after the dismissal of plaintiffs' complaint.

to file this lawsuit, so that the matters as to which discovery is sought were already stale when the claim was filed, and have become staler since. And it is plaintiffs, not defendants, who filed a lawsuit yet seek to block it from going forward.

In short, staying the proceedings until the disposition of the criminal cases is a far from ideal solution, and is by no means cost-free. Nonetheless, the Court is persuaded that—with certain caveats—it is an adequate alternate remedy to dismissal of the case, at least at this time. Dismissal is a harsh sanction, and the Court can no more assume wrongdoing on the part of plaintiffs than on the part of defendants. At least some additional delay is warranted before dismissal is appropriate.

The Court may, however, revisit the issue in the future to ascertain whether the balance of hardships has significantly shifted. To use a relatively extreme example, if a key witness were to die or otherwise become unavailable while the litigation is stayed, or if a key piece of evidence were lost, the Court might well conclude that dismissal was an appropriate remedy. Likewise, the Court might consider imposing the costs or expenses associated with the stay on plaintiffs should defendants prevail in this lawsuit. Finally, of course, the continued passage of time by itself operates to the detriment of defendants, and at some point time alone will be enough to tip the balance.

In the short term, however, the Court finds that the balance in this case weighs in favor of granting plaintiffs' request for a temporary stay of the civil proceedings. Accordingly, the Court will impose a stay of this proceeding until the earliest of (1) the date the criminal case is finally resolved or (2) September 18, 2008. If the issue is not resolved within six months, the Court will consider at that point whether a future extension is appropriate.

**III.   Conclusion**

For the foregoing reasons, the motion of defendants W-G Federal Credit Union and Deborah Beando to compel or, in the alternative, to dismiss plaintiffs' complaint and allow an adverse inference against plaintiffs in the counterclaim is DENIED.  The cross-motion of plaintiffs is GRANTED in part and DENIED in part.

This matter is stayed until the earliest of (1) the date the criminal case is finally resolved (including the time for any appeals) or (2) September 18, 2008.  The matter will be set for a status conference on September 18, 2008, at 3:00 p.m., at which time the Court will consider whether a future extension is appropriate.

**So Ordered.**

>                                         /s/ F. Dennis Saylor
>                                         F. Dennis Saylor IV
>                                         United States District Judge

Dated:  March 18, 2008