UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
GEORGE LABADIE and SUSAN            )
CARCIERI,                           )
                                    )
      Plaintiffs,                  )
                                    )
      v.                           )   Civil Action No.
                                    )   05-40148-FDS
DANIEL ROSARIO, STANLEY             )
CARPENTER, BRIAN HACKETT, W-G       )
FEDERAL CREDIT UNION, JOHN DOE 1,   )
JOHN DOE 2, JOHN DOE 3, JOHN DOE 4, )
JOHN DOE 5, and THE CITY OF         )
WORCESTER,                          )
                                    )
      Defendants.                  )
_____)

# MEMORANDUM AND ORDER ON
# MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

      This is a civil rights action arising out of the investigation, questioning, and detention of plaintiffs George Labadie and Susan Carcieri by City of Worcester police officers. The events in question occurred after an alleged robbery at the credit union at which Carcieri worked. Labadie and Carcieri were suspected of having committed the crime themselves, and were eventually convicted of various criminal charges. Plaintiffs have sued the City of Worcester and eight of its police officers, including five "John Doe" defendants, for various alleged violations of their civil rights.

      Defendants have moved for summary judgment. For the following reasons, the motion will be granted.

## I. Background

The facts are presented in the light most favorable to the plaintiff.

### A. Plaintiffs' Allegations and Complaint

On August 27, 2002, the W-G Federal Credit Union in Worcester was robbed. Susan Carcieri was an employee of the credit union. George Labadie was her husband.

The complaint alleges that while Carcieri was opening the credit union for business in the morning, she was grabbed from behind by an unknown assailant who then tied her up, robbed the safe, and fled with the money. According to the complaint, the police thereafter engaged in a pattern of investigative misconduct, including inappropriate questioning and damage to property in plaintiffs' home.

Plaintiffs filed a complaint on August 29, 2005, alleging various state and federal causes of action, including violations of their civil rights under 42 U.S.C. § 1983.

### B. State Trial Court Proceedings

In 2005, Labadie was charged in state court with attempting to commit a crime and possession of counterfeiting equipment, *Commonwealth v. Labadie*, No. 2005-02191 (Mass. Super. Ct.), and embezzlement from a bank, *Commonwealth v. Labadie*, No. 2006-02474 (Mass. Super. Ct.). (Def. SMF Exs. 11-12). Carcieri was also later charged with embezzlement from a bank. *Commonwealth v. Carcieri*, No. 2006-02475 (Mass. Super. Ct.); (Def. SMF Ex. 13).

During the state criminal proceedings, Labadie and Carcieri moved to suppress evidence on the ground that police conducted searches of their home and business without a warrant. (Def. SMF Ex. 3). They also contended that police violated their rights by damaging or destroying property in the course of the search. (*Id.*). In addition, they moved to dismiss the

indictments on the grounds that the police engaged in egregious misconduct. (*Id.*). On December 16, 2009, the Superior Court judge denied their motions, finding that the search did not violate the Fourth Amendment. (*Id.*).

On October 26, 2010, a jury convicted both Labadie and Carcieri of the crime of embezzlement from a bank in connection with the credit union robbery. (Def. SMF ¶¶ 30-31, Exs. 11, 13). Labadie was also convicted of attempted possession of counterfeit notes and possession of counterfeiting tools. (Def. SMF ¶ 31, Ex. 12). On November 1, 2010, Carcieri was sentenced to four to seven years in prison. (Def. SMF ¶ 32, Ex. 13). Labadie was sentenced to ten years of probation for the attempted possession of counterfeit notes, ten to twelve years in prison for embezzlement from a bank (as a joint venturer), and nine to ten years in prison (concurrent) for the possession of counterfeiting equipment. (Def. SMF ¶¶ 33-34, Exs. 11-12).

### C. State Court Appeal

Labadie and Carcieri appealed their convictions in November 2010. (Def. SMF ¶¶ 34-35, Exs. 11, 12, 13).

On July 25, 2012, the Massachusetts Appeals Court affirmed Labadie's two counterfeiting convictions and reversed Labadie and Carcieri's convictions for embezzlement from a bank. *Commonwealth v. Labadie*, 82 Mass. App. Ct. 263 (2012). The convictions for embezzlement from a bank were reversed on the ground that a federal credit union is not a "bank" within the meaning of Mass. Gen. Laws ch. 266, § 52. *Id.* The court held that "[t]he crime of embezzlement . . . from a Federal bank is outside the jurisdiction of [Massachusetts] courts." *Id.* at 269. However, the court also held that "the lesser included offense of larceny (as opposed to embezzlement) from a Federal bank is not preempted." *Id.* The Appeals Court

therefore concluded that because "the original convictions were nullities in light of the lack of jurisdiction, double jeopardy does not preclude retrial" against both plaintiffs on the larceny charges. *Id.*

### D. Massachusetts Supreme Judicial Court

On November 5, 2012, the Massachusetts Supreme Judicial Court allowed an application for leave to obtain further appellate review. (Def. SMF Ex. 12). On February 5, 2014, the SJC affirmed the ruling of the Appeals Court as to embezzlement from a bank by a bank employee. *Commonwealth v. Labadie*, 467 Mass. 81, 86 (2014). However, the SJC held that the evidence of the convictions for bank embezzlement provided sufficient evidence "as a matter of law to support the convictions of Carcieri and Labadie of the lesser included offense of larceny by embezzlement." *Id.* at 94. As a result, the SJC remanded the matter "to the Superior Court for entry of conviction of the lesser included offense of larceny by embezzlement, in violation of [Mass. Gen. Laws ch. 266, § 30], and for resentencing on that lesser offense." *Id.* at 95.

### E. Resentencing

On April 30, 2014, Labadie was resentenced on the lesser included offense of larceny by embezzlement. (Def's SMF Exs. 11, 12). His revised sentence was for a concurrent term of four to five years. (Def.'s SMF Exs. 11, 12). On May 21, 2014, Carcieri was resentenced on the lesser included offense of larceny by embezzlement. (Def.'s SMF Ex. 13). She received a one-year suspended sentence at MCI Framingham. (*Id.*).

### F. Civil Proceedings

The Court had stayed the civil proceedings during the lengthy pendency of the criminal case in state court, but lifted the stay following return of the verdict in the trial court.

Defendants moved for summary judgment on January 6, 2011. In lieu of filing an opposition, Labadie advised the Court of his appeal and requested that the stay be reimposed. (Pl. Mot. to Stay, Dkt. 84). The Court granted plaintiff's motion to stay proceedings in part, but nonetheless required plaintiff to file opposition to the motion for summary judgment by May 31, 2011. After considering defendants' motion for summary judgment, with some reluctance, given the age of the case, the Court reimposed the stay on July 11, 2011, during the pendency of the appeals. (Mem. & Order, Dkt. 92). The Court's order denied plaintiff's motion for summary judgment without prejudice to its renewal following the final disposition of state criminal proceedings. (*Id.*).

On December 5, 2012, Carcieri moved to voluntarily dismiss all of her remaining claims, with prejudice and as to all defendants. Carcieri's motion was granted on December 21, 2012. This dismissal left Labadie as the sole plaintiff in the case.[1]

On April 4, 2014, the Court lifted the stay. Defendants renewed their motion for summary judgment on May 27, 2014.

**II.     Standard of Review**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient

---

[1] With Labadie as the sole remaining plaintiff, only counts 4, 6, 7, 8, 9, and 10 remain.

5

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### III.  Analysis

#### A.  John Does 1-5

The complaint alleges various causes of action, including alleged civil rights violations and state tort claims, against five unnamed defendants, John Does 1-5. Defendants contend that all counts against the John Does should be dismissed because plaintiff has failed to name defendants, notwithstanding extensive discovery and a lapse of several years.

"[A] plaintiff in the heat of a confrontation with police may not know or have the opportunity to learn the identity of the alleged wrongdoer." *Wilson v. Town of Mendon*, 294 F.3d 1, 7 n.16 (1st Cir. 2002). A plaintiff has a right "to proceed against a 'John Doe' defendant whose identity can only be established through discovery." *Id.* "Once that identity is discovered, a plaintiff is permitted under the liberal regime of Rule 15 to substitute the true defendant for the fictitious 'John Doe.'" *Id.* However, the court "is not obligated to wait

6

indefinitely for [plaintiff] to take steps to identify and serve . . . unknown defendants." *Figueroa v. Rivera*, 147 F.3d 77, 83 (1st Cir. 1998) (internal quotation marks omitted).

This complaint in this action was filed on August 29, 2005. Discovery concluded in 2010. The discovery deadline was last extended to February 22, 2010, at the request of plaintiff. The Court then set a deadline of November 10, 2010, for the parties to move to reopen discovery; no such motions were filed. Plaintiff contends that he only discovered the identity of the John Does during his trial. That trial, however, concluded on October 26, 2010. The Court recognizes that plaintiff is proceeding *pro se* and that he is incarcerated, but over the long life of this action, plaintiff has had ample opportunity to ascertain the identities of the officers present during his arrest. Even after allegedly discovering the identity of John Does 1-5, plaintiff still failed to substitute any named defendants before the November 10 deadline to reopen discovery, more than five years after commencement of the case. Furthermore, plaintiff has made no efforts to amend his complaint to substitute named defendants since the criminal trial concluded in 2010. *See id.* (upholding the district court's dismissal of claims against John Doe defendants, finding "seventeen months is a more than ample interlude"). Therefore, all counts as to John Does 1-5 will be dismissed.

### B. Civil Rights Claims (Count 10)

Count 10 alleges federal and state civil rights violations under 42 U.S.C. § 1983 and Mass. Gen. Laws. ch. 12 § 11I. The federal and state claims are based on the search of plaintiff's residence, the alleged destruction and seizure of his property during the search, and his detention.

Defendants contend that the doctrine of issue preclusion, or collateral estoppel, bars

7

litigation of the civil rights claims. The related doctrines of claim preclusion and issue preclusion bar the relitigation of claims or factual issues after parties have a full and fair opportunity to litigate them. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The purposes of the doctrines are to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.*

"[F]ederal courts generally have . . . accorded preclusive effect to issues decided by state courts." *Id.* at 95. "Under federal law, a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was entered." *Torromeo v. Town of Fremont*, 438 F.3d 113, 115-16 (1st Cir. 2006) (internal quotation marks omitted). The rules of issue preclusion apply to section 1983 actions. *Allen*, 449 U.S. at 96-105. That is true even when the issue was originally raised in a state criminal proceeding. *Id.* at 104. Thus, the effect of the rulings in the state criminal prosecution will be determined by applying Massachusetts law.

Under Massachusetts law, issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988). Issue preclusion requires three elements: (1) a final judgment on the merits in the previous action; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior action; and (3) the issues in the prior and current adjudications are identical. *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005); *Tuper v. North Adams Ambulance Serv., Inc.*, 428 Mass. 132, 134 (1998). Furthermore, "[i]ssue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action" and that were essential to the

8

earlier judgment.  *Kobrin*, 444 Mass. at 844.

Here, plaintiff alleges that defendants violated his constitutional rights by (1) searching his residence on August 29, 2002; (2) destroying and seizing his property during the search; and (3) unlawfully detaining him just prior to the search.  (Compl. ¶¶ 39-40, 44-49, 50).  During the criminal prosecution, plaintiff raised these very issues by filing a motion to suppress evidence on Fourth Amendment grounds and a motion to dismiss his indictments on the ground that police engaged in "egregious misconduct" while he was detained and questioned.  (Def. SMF Ex. 3).  The state court denied his motions on the grounds that the search of his residence was constitutional, his property was not destroyed during the search, and his detention and questioning were proper.  (*Id.*).  Plaintiff was then convicted of criminal charges in the state proceeding, and he had the opportunity to appeal his conviction to the Appeals Court and the SJC.  Accordingly, (1) there was a final judgment on the merits in the prior action, (2) plaintiff was a party to that action, (3) the civil rights issues raised in the present action are identical to issues raised in the prior action, and (4) plaintiff had a full and fair opportunity to litigate those issues in the prior action.

Plaintiff contends that the doctrine of issue preclusion should not bar his civil rights claims because the prior action was a criminal action and the parties in that action are therefore not identical to the present action.  It is well-established, however, that issue preclusion prevents parties from relitigating in federal court issues decided against them in state criminal proceedings.  *Allen*, 449 U.S. at 102.  Although defendants in this action were not parties in the previous action, Massachusetts law does not require mutuality of parties.  *See Aetna Cas. & Sur. Co. v. Niziolek*, 395 Mass. 737 (1985) ("[A] party to a civil action against a former criminal

defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution.").

In short, plaintiff's federal and state civil rights claims are barred by the doctrine of issue preclusion. Defendants' motion for summary judgment as to Count 10 will be therefore granted.

### C. Malicious Interference with Advantageous Business Relations (Count 4)

Plaintiff contends that defendants intentionally interfered with his business relationship with the Massachusetts State Lottery, and that as a result, he suffered a loss of business at his gas station. (Compl. ¶¶ 59-60).[2] As defendants contend, however, it is undisputed that plaintiff's lottery account at the gas station was disabled by the Massachusetts State Lottery approximately one week before the robbery. In his opposition, plaintiff does not dispute this or make any argument for why this claim should survive. Accordingly, the motion for summary judgment as to Count 4 for malicious interference with advantageous business relations will be granted.

### D. Replevin / Conversion (Count 6)

Count 6 is a claim for replevin or conversion based on defendants taking of plaintiff's property and funds as part of the August 2002 seizure of his residence. Under Massachusetts law, an action for replevin requires a party to prove that (1) the goods in question exceed $20 in value; (2) they were unlawfully taken or detained; and (3) plaintiff is the owner or person entitled to possession of the goods. Mass. Gen. Laws ch. 247 § 7. An action for conversion requires the plaintiff to prove that (1) defendant wrongfully exercises control over personal tangible property; (2) plaintiff has an ownership or possessory right in the property with which

---

[2] At the time of the robbery, Labadie and Carcieri owed $43,500 to the Massachusetts Lottery Commission and had substantial debts associated with a gas station they owned and operated across the street from the credit union.

defendant interferes at the time of defendant's wrongful act; and (3) defendant's wrongful act damages plaintiff. *Patricia Kennedy & Co., Inc. v. Zam-Cul Enterprises, Inc.*, 830 F. Supp. 53, 59 (D. Mass. 1993) (citing *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 806 F. Supp. 291, 296 (D. Mass. 1992)).

Actions for replevin and conversion both require the plaintiff to prove that he is entitled to possession of the goods in question or that the property was unlawfully taken. Here, where "the property was evidence of a crime and/or fruit of the crime of which [p]laintiff has been convicted, he is not entitled to its possession and the property was lawfully seized." (Def. Mem. Support Summ. J. 20). The Massachusetts Superior Court confirmed the legality of the search warrant and the constitutionality of the search and seizure. (Def. SMF Ex. 3). Therefore, the seizure of funds and property related to plaintiff's criminal convictions were not unlawful. Furthermore, and in any event, Mass. Gen. Laws ch. 258 § 10(d) provides defendants with immunity from liability for "any claim arising in respect of . . . the lawful detention of any goods or merchandise by any law enforcement officer." Accordingly, the motion for summary judgment as to count 6 for unlawful detainer will be granted.

### E. Tortious and Malicious Destruction of Real and Personal Property (Count 7)

Defendants contend, and plaintiff acknowledges, that malicious destruction of real and personal property is a crime under Mass. Gen. Laws ch. 266 § 127. Plaintiff may not assert a criminal claim against defendants in a civil action.

To the extent that count 7 should be construed as alleging a tort under Massachusetts law, plaintiff does not identify the individuals who destroyed property in his residence. Although plaintiff contends that he witnessed people actually destroying his property, he specifically

11

denied ever seeing defendants Rosario and Hackett during the search. (Def. SMF Ex. 10).
Plaintiff has failed to set forth any specific facts showing that there is a genuine issue for trial.
Therefore, a jury could not find that Rosario and Hackett had any role in the destruction of
plaintiff's property. Accordingly, the motion for summary judgment as to count 7 for tortious
and malicious destruction of real and personal property will be granted.

### F. Assault and Battery (Count 8)

Plaintiff contends that "the actions of Rosario [and] Hackett . . . constituted an assault
and battery upon" him. (Compl. Count 8 ¶ 2). According to plaintiff's testimony at his criminal
proceeding, he had never encountered either Rosario or Hackett before in his life, and did not
encounter either person on the day of the arrest and search. (Def. SMF Ex. 10). It follows that
they could not have committed an assault and battery on plaintiff during the arrest and search.
Moreover, Hackett (by affidavit) and Rosario (by deposition) have testified that they had no
physical interaction with plaintiff. (Def. SMF Exs. 8-9). Plaintiff has provided no evidence to
rebut this, and does not contend otherwise in his opposition. Accordingly, the motion for
summary judgment as to count 8 for assault and battery will be granted.

### G. False Arrest and Imprisonment (Count 9)

Plaintiff contends that defendants' actions constituted false arrest and imprisonment. "To
sustain a claim for false imprisonment in Massachusetts, . . . plaintiff must demonstrate an
intentional and unlawful confinement of a person, either directly or indirectly, of which the
person confined is conscious or is harmed by such confinement." *Jonielunas v. City of
Worcester Police Dept.*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004). A claim for false
imprisonment requires a finding of an arrest "without probable cause." *Jonielunas*, 629 F. Supp.

at 177.

Thus, in order to succeed in his claim for false arrest, plaintiff would have to prove that he was arrested without probable cause. That, in turn, would necessarily mean that his criminal convictions were invalid.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that where a prisoner seeks damages for an allegedly unconstitutional conviction, such an action cannot be brought because the success of the suit would effectively invalidate the prisoner's underlying conviction and sentence. *Heck*, 512 U.S. at 486-87; *see also Thore v. Howe*, 466 F.3d 173, 179 (1st Cir. 2006). The "*Heck* bar" advances the interests of "finality and consistency" by limiting the opportunities for collateral attack" on criminal convictions. *Heck*, 512 U.S. at 485.

"[I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment . . . a [civil rights] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87. This so-called "favorable termination" rule applies not only where the plaintiff expressly states that his conviction or sentence is invalid, but wherever "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. The *Heck* bar has been applied to this exact situation involving an allegation of false arrest. *Sholley v. Town of Holliston*, 49 F. Supp. 2d 14, 18 (D. Mass. 1999) (explaining that "proof that there was no probable cause to arrest for any reason necessarily implies the invalidity of the conviction for failure to submit").

Even if the "favorable termination" rule did not bar plaintiff's claim for false

imprisonment, there is no genuine dispute of material fact as to whether the arrest was supported by probable cause. The undisputed evidence shows that all warrants were valid and that plaintiff was convicted of crimes related to the credit union robbery. Accordingly, because plaintiff has been convicted for crimes related to the credit union robbery, he cannot as a matter of law establish the absence of probable cause.

Accordingly, the motion for summary judgment as to count 9 for false arrest and imprisonment will be granted.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: January 9, 2015